UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

PRIORITY SEND

CIVIL MINUTES -- GENERAL

Case No.   **CV 04-9006-JFW (PLAx)**                                              Date: April 29, 2005

Title:   RED BULL GmbH, et al. -v- MATADOR CONCEPTS, INC., et al.

**DOCKET ENTRY**

**PRESENT:**

HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE

Shannon Reilly                                                        None Present
Courtroom Deputy                                                Court Reporter

**ATTORNEYS PRESENT FOR PLAINTIFFS:**              **ATTORNEYS PRESENT FOR DEFENDANTS:**
None                                                                             None

**PROCEEDINGS (IN CHAMBERS):**   ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' AND COUNTERCLAIM DEFENDANTS' MOTION TO DISMISS CERTAIN COUNTERCLAIMS AND MOTION TO STRIKE CERTAIN AFFIRMATIVE DEFENSES [filed 3/28/05; Docket No. 32]

On March 28, 2005, Plaintiffs/Counterclaim Defendants Red Bull GmbH and Red Bull North America, Inc. (collectively "Red Bull") filed a Motion to Dismiss Certain Counterclaims and to Strike Certain Affirmative Defenses. On April 4, 2005, Defendant/Counterclaim Plaintiff Matador Concepts, Inc. ("Matador") filed its Opposition. On April 25, 2005, Red Bull filed a Reply. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that this matter is appropriate for decision without oral argument. The hearing calendared for May 2, 2005 is hereby vacated and the matter taken off calendar. After considering the moving, opposing, and reply papers and the arguments therein, the Court rules as follows:

**I.   Procedural History**

On February 22, 2005, Matador filed a First Amended Answer to Complaint and Counterclaims alleging the following five counterclaims against Red Bull: (1) Declaration of no infringement and no dilution; (2) Declaration of no unfair competition and false advertising; (3) Cancellation of Red Bull's federal registrations; (4) Unfair competition and false advertising;

and (5) Violations of the Sherman Act and the Clayton Act.[1] Red Bull moved to dismiss Matador's Third, Fourth and Fifth Counterclaims, each predicated upon allegations that Red Bull violated the antitrust laws, on the grounds that Matador had not adequately alleged "antitrust standing." Red Bull also moved to strike 12 of Matador's 31 affirmative defenses on the grounds that Matador had failed to satisfy minimal pleading requirements. On March 4, 2005, the Court granted Red Bull's motion in part and dismissed Matador's Third, Fourth and Fifth Counterclaims without prejudice. The Court also ruled that two of Matador's affirmative defenses which were based upon allegations of antitrust violations were stricken without prejudice.

On March 14, 2005, Matador filed a Second Amended Answer to Complaint and Counterclaims alleging the same counterclaims and affirmative defenses against Red Bull. In its present Motion, Red Bull moves to dismiss Matador's Third, Fourth and Fifth Counterclaims and moves to strike Matador's Twenty-Seventh Affirmative Defense for trademark misuse and Twenty-Eighth Affirmative Defense for copyright misuse.

## II.  Legal Standards

### A.  Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. Accordingly, "[a] Rule 12(b)(6) dismissal is proper only where there is either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Summit Technology, Inc. v. High-Line Medical Instruments Co., Inc.*, 922 F. Supp. 299, 304 (C.D. Cal. 1996) (*quoting Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988)). In deciding a motion to dismiss, a court must accept as true the allegations of the complaint and must construe those allegations in the light most favorable to the nonmoving party. *See, e.g., Wyler Summit Partnership v. Turner Broadcasting System, Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). "However, a court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations." *Summit Technology*, 922 F. Supp. at 304 (*citing Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981) *cert. denied*, 454 U.S. 1031 (1981)).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990) (citations omitted). However, a court may consider material which is properly submitted as part of the complaint and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201 without converting the motion to dismiss into a motion for summary judgment. *See, e.g., id.* Where a motion to dismiss is granted, a district court should provide leave to amend unless it is clear that the complaint could not be saved by any amendment. *See Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996).

---

[1] Matador filed its first Answer to Complaint and Counterclaims on December 28, 2004. Red Bull moved to dismiss certain of those counterclaims on January 28, 2005, and Matador filed its First Amended Answer to Complaint and Counterclaims in conjunction with its Opposition to Red Bull's Motion.

### B.    Federal Rule of Civil Procedure 12(f)

Pursuant to Federal Rule of Civil Procedure 12(f), "[u]pon Motion made by a party before responding to a pleading . . . the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are "generally viewed with disfavor and not frequently granted." *Clement v. American Greetings Corp.*, 636 F. Supp. 1326, 1332 (S.D. Cal. 1986).

## III.   Discussion

### A.    Red Bull's Motion to Dismiss Matador's Fourth and Fifth Counterclaims

In its Fifth Counterclaim, Matador alleges that "Red Bull has impermissibly extended the scope of Red Bull's copyright and trademark rights through the unlawful conduct" alleged in its Counterclaim and "has unlawfully used such copyrights and trademarks to derive a competitive advantage over Matador." Second Amended Counterclaims at ¶ 27. Matador further alleges that "Red Bull's conduct violates section 2 of the Sherman Act and Matador is entitled to damages under section 4 of the Clayton Act." *Id.* Red Bull moves to dismiss Matador's Fifth Counterclaim on the grounds that Matador has once again failed to plead "antitrust standing," and more specifically, "antitrust injury," including a failure to adequately plead that Red Bull engaged in unlawful conduct that is of the type the antitrust laws were intended to prevent.

Private suits to enforce the Sherman Act are authorized by Section 4 of the Clayton Act, 15 U.S.C. § 15(a), which provides that "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor." 15 U.S.C. § 15(a). In order to recover under Section 4, a plaintiff must establish that it has "antitrust standing." *See, e.g., Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 535 (1983); *see also Glen Holly Entertainment, Inc. v. Tektronix, Inc.*, 343 F.3d 1000, 1007 (9th Cir. 2003) ("Only those who meet the requirements for 'antitrust standing' may pursue a claim under the Clayton Act."). The factors relevant to antitrust standing include: "(1) the nature of the plaintiff's alleged injury, that is, whether it was the type the antitrust laws were intended to forestall; (2) the directness of the injury; (3) the speculative measure of the harm; (4) the risk of duplicative recovery; and (5) the complexity in apportioning damages." *American Ad Management, Inc. v. General Tel. Co.*, 190 F.3d 1051, 1054-55 (9th Cir. 1999).

"[T]o acquire 'antitrust standing,' a plaintiff must adequately allege and eventually prove 'antitrust injury.'" *Glen Holly Entertainment*, 343 F.3d at 1007; *see also Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 110 n.5 (1986) ("A showing of antitrust injury is necessary, but not always sufficient, to establish standing under § 4."). "Antitrust injury is defined not merely as injury caused by an antitrust violation, but more restrictively as 'injury of the type the antitrust laws were intended to prevent that flows from that which makes defendants' acts unlawful.'" *Glen Holly Entertainment*, 343 F.3d at 1007 (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). The Ninth Circuit has identified four requirements for antitrust injury: "(1) unlawful conduct, (2) causing injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent." *American Ad Management*, 190 F.3d at 1055.

Matador claims that by registering and acquiring trademarks that it has no intention of using in commerce, by claiming exclusive copyrights to functional language, and by filing a complaint against Matador in an attempt to put Matador out of business, Red Bull seeks to prevent competitors from entering the "energy drink market." Second Amended Counterclaims at ¶¶ 11, 14, 16. Matador claims that the foregoing alleged unlawful conduct violates Section 2 of the Sherman Act, which prohibits monopolization, attempted monopolization and conspiracy to monopolize. "To survive a motion to dismiss [its] monopolization claim, [Matador] must allege, in addition to antitrust injury: '(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident.'" *David v. Pacific Bell*, 204 F. Supp. 2d 1236, 1241 (N.D. Cal. 2002) (quoting *Eastman Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451, 481 (1992)). The elements of a claim for attempted monopolization are: "(1) specific intent to control process or destroy competition; (2) predatory or anticompetitive conduct directed at accomplishing that purpose; (3) a dangerous probability of achieving 'monopoly power'; and (4) causal antitrust injury." *Rebel Oil Co., Inc. v. Atlantic Richfield Co.*, 51 F.3d 1421, 1433 (9th Cir. 1995).

Without reaching the issue of whether Matador has sufficiently alleged monopolization or attempted monopolization,[2] the Court finds that Matador has simply failed to allege that it has suffered injury from Red Bull's alleged unlawful conduct that would give Matador "antitrust standing" or would entitle Matador to relief under Section 4 of the Clayton Act.[3] With respect to Matador's claims that Red Bull is registering and acquiring trademarks that it has no intention of using in commerce and is claiming exclusive copyrights to functional language, Matador has failed to adequately allege that this conduct has injured Matador. To the contrary, Matador states in its Second Amended Counterclaims that "Matador's energy drink outsells Red Bull's energy drink by more than two to one at the locations where both products are sold." Second Amended Counterclaims at ¶ 8. Indeed, although Matador claims that Red Bull's alleged "impermissible" attempts to "expand the scope" of its trademark and copyright registrations prevents "competitors" from accessing the "energy drink market," Matador's own admissions demonstrate that it has not only gained access to the "energy drink market," but is outperforming Red Bull in every location that the two are sold. *See id.*

---

[2] Although not addressed by the parties in their briefs, the Court notes that Matador's revised allegations in its Second Amended Counterclaims fail to address the Court's concerns that Matador has not adequately alleged a legally sufficient relevant market as set forth in the Court's March 4, 2005 Order regarding Red Bull's first Motion to Dismiss. *See, e.g., United States v. E.I. Du Pont de Nemours & Co.*, 353 U.S. 586, 593 (1957) ("Determination of the relevant market is a necessary predicate to a finding of a violation of the Clayton Act because the threatened monopoly must be one which will substantially lessen competition within the area of effective competition. Substantiality can be determined only in terms of the market affected."); *see also Brown Shoe Co. v. United States*, 370 U.S. 294, 336 (1962).

[3] The Court notes that contrary to Matador's assertion in its Opposition that the Court ruled on Red Bull's first Motion to Dismiss that Matador had sufficiently alleged "unlawful conduct," the Court did not make such a finding.

Matador's allegation that Red Bull filed this action with the knowledge that Matador did not have sufficient resources to defend it in an attempt to put Matador out of business also fails to state a viable claim under Section 2 of the Sherman Act. Essentially, Matador is claiming that Red Bull is engaging in anticompetitive, or sham, litigation which is not protected by the immunity established in the *Noerr* and *Pennington* cases. *See Eastern R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *United Mine Workers v. Pennington*, 381 U.S. 657 (1965). The Supreme Court has outlined a two-part definition of "sham" litigation:

> First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit it immunized under *Noerr*, and an antitrust claim premised on the sham exception must fail. Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation."

*Professional Real Estate Investors v. Columbia Pictures Indus.*, 508 U.S. 49, 60 (1993). Once again, Matador's own admissions defeat its claim. Matador's First Counterclaim, in which Matador alleges that "an actual controversy exists between Red Bull and Matador regarding whether Matador infringes or dilutes Red Bull's purported rights in certain trademarks," establishes that Matador does not believe that Red Bull's lawsuit is not "objectively baseless." Second Amended Counterclaims at ¶ 17. Matador's First Counterclaim notwithstanding, the Court finds that Red Bull's claims are not objectively baseless and Matador has failed to state a claim for anticompetitive litigation under the Sherman Act.[4] Accordingly, Red Bull's Motion to Dismiss Matador's Fifth Counterclaim is **GRANTED**.

Matador's Fourth Counterclaim alleging unfair competition and false advertising is explicitly based upon its allegations that Red Bull violated Section 2 of the Sherman Act. *See* Second Amended Counterclaims at ¶ 23. In light of the Court's finding that Matador has failed to allege a violation of Section 2 of the Sherman Act, Matador's Fourth Counterclaim fails as well. Accordingly, Red Bull's Motion to Dismiss Matador's Fourth Counterclaim is **GRANTED**.

B.   Red Bull's Motion to Dismiss Matador's Third Counterclaim

In its Third Counterclaim, Matador seeks the cancellation of Red Bull's trademark registration numbers 2,271,702 and 2,829,269. Red Bull moves to dismiss this Counterclaim on the grounds that this claim is dependent upon Matador's insufficient claims that Red Bull violated the antitrust laws. *See* Motion at 22.

The Court disagrees with Red Bull and finds that Matador has adequately plead its Third Counterclaim for cancellation of Red Bull's trademarks. Accordingly, Red Bull's Motion to Dismiss Matador's Third Counterclaim is **DENIED**.

---

[4] In fact, the only "injury" claimed by Matador in its Opposition is the risk that a judgment in Red Bull's favor on Red Bull's claims for relief will put Matador out of business. This is simply not the type of "injury" that the antitrust laws were intended to prevent.

### C. Red Bull's Motion to Strike Two of Matador's Affirmative Defenses

In its Twenty-Seventh Affirmative Defense, Matador claims that "Plaintiffs' marks have been used to violate section 2 of the Sherman Act and by reason thereof, such marks are invalid." Second Amended Answer at 14. In its Twenty-Eighth Affirmative Defense, Matador claims that "Plaintiffs' copyrights have been used to violate section 2 of the Sherman Act and by reason thereof, such marks are invalid." *Id.* For the reasons set forth in Section III.A., *supra*, the Court finds that these defenses are "insufficient" and should be stricken under Federal Rule of Civil Procedure 12(f).

Accordingly, Red Bull's Motion to Strike is **GRANTED**.

## IV. Conclusion

For all of the foregoing reasons, Red Bull's Motion to Dismiss Certain Counterclaims and to Strike Certain Affirmative Defenses is **GRANTED in part**. Matador's Fourth and Fifth Counterclaims are **DISMISSED with prejudice**. *See, e.g., In re All Terrain Vehicle Lit.*, 771 F. Supp. 1057, 1062 (C.D. Cal. 1991) ("Repeated failure to cure deficiencies by previous amendments is an appropriate basis for dismissing the action with prejudice."). Matador's Twenty-Seventh Affirmative Defense for trademark misuse and Twenty-Eighth Affirmative Defense for copyright misuse are **STRICKEN with prejudice**. *See id.* The balance of Red Bull's Motion is **DENIED**.

IT IS SO ORDERED.

The Clerk shall serve a copy of this Minute Order on all parties to this action.